IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CYNTHIA P., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | No. 3:19-cv-808-M-BN | |
| § | | |
| ANDREW M. SAUL, § | | |
| Commissioner of Social § | | |
| Security Administration, § | | |
| § | | |
| Defendant. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from Chief Judge Barbara M. G. Lynn. *See* Dkt. No. 4.

Plaintiff Cynthia P. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 16.

The Commissioner has filed his response in opposition, *see* Dkt. No. 17, and Plaintiff has filed her reply, *see* Dkt. No. 18.

For the reasons explained below, the hearing decision should be reversed.

**Background**

Plaintiff alleges that she is disabled due to obesity, type II diabetes mellitus with diabetic polyneuropathy, mild lumbar degenerative spondylosis, hyperthyroidism, anemia, and nonobstructive coronary artery disease of the left circumflex artery. *See* Dkt. No. 13-1 at 21. Plaintiff also suffers from benign

hypertension, gastroesophageal reflux disease, and plantar fascial fibromatosis. *See id.* at 22.

After Plaintiff's application for a period of disability and disability insurance benefits were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was initially held on April 13, 2017 but was rescheduled to February 12, 2018, so that Plaintiff could obtain responses to a series of interrogatories. *See* Dkt. No. 13-1 at 38-80.

At the time of the hearing, Plaintiff was 52 years old. *See id.* at 49. She is a high school graduate and received an associate degree in business in 1988. *See id.* at 50.

Plaintiff has worked as a desk clerk, a driver, a 911 dispatcher, a matron, a clerk, and an administrative assistant. *See id.* at 50-59. Plaintiff has not engaged in substantial gainful activity since April 18, 2014. *See id.* at 21.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 19-28. Although the ALJ found that Plaintiff's severe impairments included "obesity, type II diabetes mellitus with diabetic polyneuropathy, mild lumbar degenerative spondylosis, hyperthyroidism, anemia, and nonobstructive coronary artery disease of the left circumflex artery," *id.* at 21, the ALJ nonetheless concluded that these impairments did not meet or equal the criteria of a severe impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1, *see id.* at 23.

The ALJ further determined that Plaintiff had the residual functional capacity ("RFC") to perform light work which included the ability to

> lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit throughout an 8-hour workday; stand or walk (either individually or in combination) 2 to 4 hours in an 8-hour workday; and otherwise perform the full range of light work, with these additional limitations: She can only occasionally stoop, crouch, or climb ladders, scaffolds, or ropes. She can frequently kneel, crawl, or climb ramps or stairs.

Dkt. No. 13-1 at 24.

Given Plaintiff's age, education, and exertional capacity for light work, the ALJ determined that Plaintiff is not disabled and otherwise capable of making a successful adjustment to such work. The ALJ concluded that Plaintiff could return to her past relevant work as a dispatcher and administrative assistant.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff challenges the hearing decision on three separate grounds.

First, Plaintiff contends that the ALJ erred by failing to evaluate or provide an explanation for rejecting the opinion of her treating physician, Dr. Anjanette Tan, and by failing to evaluate the 20 C.F.R. § 404.1527(c)(2) factors as they applied to Dr. Tan's opinion.

Second, Plaintiff argues that the ALJ erred by relying on the opinions of the State agency medical consultants that were contradicted by examining and treating sources in determining Plaintiff's residual functional capacity.

Third, Plaintiff argues that the ALJ's finding that she did not have any manipulative limitations is not supported by substantial evidence.

The Commissioner opposes Plaintiff's appeal and argues that Dr. Tan did not provide a medical opinion as contemplated under the Social Security regulations. The

3

Commissioner further argues that the ALJ properly relied on the opinions of the state agency regarding Plaintiff's ability to work. And the Commissioner argues that the ALJ was correct in not including Plaintiff's purported manipulative limitations in his residual functional capacity findings.

The undersigned concludes that the hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See*

*Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way,

6

Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

I. The ALJ should have evaluated or provided an explanation for rejecting the April 3, 2017 questionnaire submitted to Dr. Tan.

Plaintiff first argues that the ALJ committed a reversible error when it failed to take into account the opinion of her treating physician, Dr. Anajanette Tan. *See* Dkt. No. 16 at 16-20.

In response to a questionnaire addressed to Dr. Tan, Dr. Tan's physician assistant reported that, due to Plaintiff's Type 2 diabetes mellitus, Plaintiff experienced pain, tingling, numbness, burning, or weakness and that she would often experience lapses of concentration, persistence, or pace. *See* Dkt. No. 13-1 at 1472.

Dr. Tan first began treating Plaintiff on April 28, 2015, for Plaintiff's diabetes and associated neurological complications and polyneuropathy. *See id.* at 797. Dr. Tan and her physician assistant, Jennifer Crumm, continued to treat Plaintiff through January 16, 2018. *See* Dkt. No. 16 at 18.

Plaintiff argues that, despite Dr. Tan's history as her treating physician for diabetes and associated illnesses, the "ALJ did not in any way evaluate or even acknowledge the April 3, 2017, treating source opinion of Dr. Tan and PAC Crumm, and therefore the ALJ did not conduct an evaluation of the 20 C.F.R. § 404.1527(c)(2) factors as they apply to Dr. Tan's opinion." *Id.* at 18.

The Commissioner responds by arguing that there is actually no evidence that Dr. Tan knew about the April 3, 2017 questionnaire that Ms. Crumm completed and

7

signed. *See* Dkt. No. 17 at 3. The Commissioner points out that, as a physician assistant, Ms. Crumm is not authorized under the regulation to provide a medical opinion. *See id.*

More fundamentally, the Commissioner argues that Ms. Crumm's finding that Plaintiff would often have lapses of concentration persistence or pace is not a medical opinion as defined by the regulations. *See id.* The Commissioner asserts that Ms. Crumm did not provide any information reflecting Plaintiff's symptoms or prognosis, or what Plaintiff's physical or mental restrictions are. *See id.* The Commissioner asserts that a finding that a patient often has lapses of concentration or pace is not a restriction. *See id.*

The Commissioner also points out that Ms. Crumm's finding was contradicted by Plaintiff's pain management specialist Dr. Timothy Ratino. *See id.* The Commissioner argues that Dr. Ratino repeatedly noted that Plaintiff denied any difficulty concentrating. *See id.*

And the Commissioner argues that Ms. Crumm's response in the questionnaire is unworthy of credence. *See id.* at 4. The Commissioner cites appellate court opinions from outside this circuit that stand for the proposition that form reports where a physician's obligation is simply to check a box serve as weak evidence at best in determining a claimant's illness or ability. *See id.* And the Commissioner cites district court opinions within the Fifth Circuit that hold that a doctor's opinion was not credible when the physician simply completed a checklist without any narrative support. *See id.* at 5.

8

In Plaintiff's reply, she contends that the Commissioner's argument that questionnaire signed by Ms. Crumm is not a medical opinion is misguided because the questionnaire was issued under Dr. Tan's name. *See* Dkt. No. 18 at 1. Plaintiff argues that, because the opinion was issued under Dr. Tan's name, it shows that Dr. Tan knew about the questionnaire. *See id.* Plaintiff also shows that the Social Security Administration itself recognized the April 3, 2017 opinion as that of Dr. Tan's. *See id.*

Plaintiff further argues that, if there was ambiguity regarding the April 3, 2017 opinion, the ALJ should have sought clarification as to its source. *See id.* at 2. Plaintiff argues that the ALJ has a duty to seek clarification of any ambiguity. *See id.*

According to Plaintiff, the April 3, 2017 questionnaire is a medical opinion. *See id.* Plaintiff claims that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *Id.* at 2-3 (internal citations and quotations omitted). Plaintiff argues that Dr. Tan and Ms. Crumm's opinion meets this definition because the April 3, 2017 questionnaire reflects their opinion as to the work limitations regarding Plaintiff's concentration, persistence, or pace. *See id.* Plaintiff argues that this is one of the four functional areas that were supposed to be assessed in determining the impact of a mental impairment. *See id.* at 3.

9

And Plaintiff argues that the ALJ never conducted the analysis that the Commissioner engages in on appeal. *See id.* at 3. Plaintiff claims that the ALJ should have addressed whether the April 3, 2017 questionnaire amounts to a medical opinion and whether good cause exists to discount that opinion. *See id.*

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Martinez*, 64 F.3d at 175-76 (citing 20 C.F.R. § 404.1527(c)(2)). And "[t]he opinion of a specialist generally is accorded greater weight than that of a nonspecialist." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Section 404.1527(d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Newton*, 209 F.3d at 456. Specifically, the ALJ must consider: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2);

*see also Newton*, 209 F.3d at 456. The ALJ must consider all six of the Section 404.1527(d)(2) factors if "controlling weight" is not given to a treating physician's medical opinions. See 20 C.F.R. § 404.1527(d) ("Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."); *see also Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *McDonald v. Apfel*, No. 3:97–CV–2035–R, 1998 WL 159938, at *8 (N.D. Tex. Mar.31, 1998).

As to the April 3, 2017 questionnaire addressed to Dr. Tan, but completed and signed by Ms. Crumm, the undersigned notes that a physician's assistant is not an "acceptable medical source" whose opinion is entitled to controlling weight. *See, e.g., Shubargo v. Barnhart*, 161 F. App'x 748, 751, 2005 WL 3388615, at *3 (10th Cir. Dec. 13, 2005); *Latham v. Astrue*, No. 7:07-cv-86-BD, 2008 WL 4635396, at *3 (N.D. Tex. Oct. 15, 2008) ("Only licensed physicians or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered 'acceptable medical sources' who can provide evidence that a claimant suffers from a medically determinable impairment.") (citing 20 C.F.R. §§ 404.1513(a) & 416.913(a)); *Smith v. Shalala*, 856 F. Supp. 118, 122 (E.D.N.Y. 1994). Nevertheless, Ms. Crumm's findings "may be used to show the severity of [Plaintiff's] impairment and how it affects [her] ability to work." *Latham*, 2008 WL 4635396, at *3 (citing 20 C.F.R. §§ 404.1513(d) & 416.913(d)) (allowing consideration of other medical-source evidence and defining "other sources" to include physician's assistants).

11

But there is disagreement as to whether Ms. Crumm completed and signed the April 7, 2013 questionnaire under Dr. Tan's authority. *See* Dkt Nos. 16-18. And the document itself is unclear as it addresses Dr. Tan but appears to be completed and signed by Ms. Crumm. *See* Dkt. No. 13-1 at 1470-74. And the administrative record shows Dr. Tan as the treating source for the questionnaire. *See id.* at 1470.

The undersigned finds that there is an ambiguity as to whether the April 7, 2013 questionnaire was completed solely by Ms. Crumm or whether it was a collaborative effort undertaken by Dr. Tan and Ms. Crumm collectively. *See id.* at 1470-74. Indeed, if the April 7, 2013 were completed under Dr. Tan's authority, it would serve as a medical opinion from Plaintiff's treating physician and would be entitled to a greater degree of deference. And a finding that Plaintiff often has difficulty with concentration would likely affect her residual functional capacity.

The United States Court of Appeals for the Fifth Circuit imposes a duty on an ALJ "to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *See Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy his duty, his decision is not substantially justified." *Id.* And 20 C.F.R. § 404.1512(e) provides in pertinent part:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your

12

> medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e).

The undersigned finds that the ALJ erred by not developing the facts fully and fairly as to the April 3, 2017 questionnaire. The ALJ should have sought clarification as to the treating source of the questionnaire. If the questionnaire qualifies as a treating physician's opinion, the ALJ has a duty to address that opinion. And, even if the questionnaire qualifies as an "other source" opinion, the ALJ has a duty to explain the weight given to that opinion.

II. The ALJ incorrectly relied on opinions of the state agency medical consultants.

Plaintiff also argues that the ALJ erred by giving too much weight to the opinions of non-treating and non-examining state agency medical consultants in determining Plaintiff's residual functional capacity. *See* Dkt. No. 16 at 21. Plaintiff argues that the state agency opinions were contradicted by the opinions of her treating physicians.

Specifically, Plaintiff points out that the state agency medical consultants concluded that Plaintiff retained the ability to "lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for 6 hours during an 8-hour workday; frequently kneel, crawl, and climb ramps, stairs, ladders, ropes or scaffolds; and occasionally stoop and crouch with no visual communicative or environmental limitations." *Id.* The state agency medical consultants also found that Plaintiff could frequently handle and occasionally feel and finger. *See id.*

But Plaintiff asserts that her treating physician, Dr. Mudaliar, opined that Plaintiff could not be on her feet more than two hours during an eight-hour workday and could not lift ten pounds frequently and twenty pounds occasionally and that Plaintiff had only a negligible ability to perform hand manipulations and reaches with her right hand and arm. *See id.* Plaintiff further argues that there is no opinion from any one of her treating or examining physicians that supports the ALJ's residual functional capacity finding.

Plaintiff argues that the ALJ incorrectly discredited Dr. Mudaliar's opinion. *See id.* at 22. Plaintiff asserts that Dr. Mudaliar's opinions are supported by his examination findings that Plaintiff suffers from peripheral neuropathy in her extremities and that she has severe tenderness in her upper and lower back and that she has an impaired gait. *See id.* Dr. Mudaliar's examination of Plaintiff also shows that she is unable to hold anything with her right hand. *See id.*

Plaintiff asserts that the ALJ incorrectly relied on the opinion of Plaintiff's pain management doctor, Dr. Ratino, to discredit Dr. Mudaliar's opinion. *See id.* But Plaintiff claims that Dr. Ratino's opinion actually supports Dr. Mudaliar's opinion.

And Dr. Ratino's records show that Plaintiff has experienced significant levels of pain. *See id.* Dr. Ratino's findings show that Plaintiff had polyneuropathy with neurological manifestations that affected the nerves in her hands, feet legs and arms. *See id.* at 23.

The Commissioner responds by arguing that the ALJ may properly base his residual functional capacity assessment on the state medical consultant's analysis. *See* Dkt. No. 17 at 6.

The Commissioner also argues that Dr. Mudaliar's findings are not supported by the evidence on record. *See id.* at 7. The Commissioner points out that Plaintiff incorrectly attempts to prop up Dr. Mudaliar's opinion with reports made by Dr. Ratino. *See id.* The Commissioner asserts that Dr. Ratino's records show that Plaintiff's symptoms were well controlled with medication. *See id.* Further, Dr. Ratino's physical examination of Plaintiff shows that Plaintiff demonstrated normal balance and gait as well as normal sensation. *See id.*

But Dr. Mudaliar's examination notes do show that Plaintiff "has definite peripheral neuropathy in both lower and upper extremities. Her hand grip [is] very poor and [he can] hardly feel the grip. Right hand is worse than the left hand." Dkt. No. 13-1 at 725. Dr. Mudaliar also found that Plaintiff "is not able to squat, walk on her heels or toes," and that "her gait is impaired." *Id.* These findings contradict the findings of the state agency medical consultants.

Given the inconsistency between the opinions of Plaintiff's examining physician and the state agency medical consultants, the undersigned determines that the ALJ's reliance on the state agency medical consultants' opinions was improper.

III. The ALJ's residual functional capacity finding is not supported by substantial evidence.

Plaintiff also asserts that the ALJ's determination that Plaintiff had no manipulative limitations is not supported by substantial evidence. *See* Dkt. No 16 at

15

25. Specifically, Plaintiff claims that the ALJ's finding that Plaintiff has no manipulative limitations is not supported by the fact that the ALJ also found that Plaintiff's diabetic polyneuropathy is a severe impairment. *See id.*

At the administrative hearing, Plaintiff testified that her diabetic polyneuropathy caused her to stop working in 2014 because she was having trouble with her hands and her feet and back. *See id.* Plaintiff testified that her hands would sometimes go numb and would lock up. *See id.* Plaintiff also testified that she could write less than a paragraph before her hands would go numb, that she could not cut up her own food, and that she would often drop things. *See id.*

And Plaintiff's testimony is consistent with the examination findings of Dr. Mudaliar. *See* Dkt. No. 13-1 at 725. Dr. Mudaliar found that Plaintiff had definite peripheral neuropathy of the upper extremities. *See id.* Dr. Mudaliar also found that Plaintiff had very poor grip strength and that he could hardly feel Plaintiff's grip. *See id.* And Dr. Mudaliar found that Plaintiff could hardly hold anything with her right hand. *See id.*

Plaintiff points out that even state agency medical consultant Dr. Harper concluded that Plaintiff would be limited to occasional fingering and feeling. *See* Dkt. No. 16 at 27. Plaintiff argues that "[s]uch limitations would preclude the performance of [her] past relevant work as a government service dispatcher, *Disctionary of Occupational Titles* (DOT) § 379.362-010, and administrative assistant, DOT § 169.167-010, which the DOT's companion publication *Selected Characteristics of*

16

*Occupations Defined in the Revised Dictionary of Occupational Titles*, Part A, pp. 337, 387, reports require frequent fingering." *Id.* at 27.

In fact, Plaintiff argues, there was only one medical consultant's opinion in the record that supported a lack of manipulative limitations. *See id.* at 28. And Plaintiff explains that even that medical consultant found that Plaintiff's diabetes resulted in peripheral neuropathy in both upper extremities, and that Plaintiff had a loss of sensation in her hands and that she had very poor grip strength. *See id.*

The Commissioner responds by arguing that the ALJ was correct in not including manipulative limitations in his residual functional capacity finding. *See* Dkt. No. 17 at 8. The Commissioner argues that there is evidence that shows that after Plaintiff had surgery for carpal tunnel in July 2015 she did not complained about issues with her hands. *See id.* at 8.

In Plaintiff's reply, she reiterates that the opinions of non-examining physicians are insufficient evidence when taken alone or when they contradict the examining physician's medical opinion. *See* Dkt. No. 18 at 7.

Plaintiff also claims that the record does show that she complained about issues with the use of her hands after she had surgery on July 16, 2015. *See id.* Plaintiff points out that she complained about her hands and her feet and back during her administrative hearing. *See id.* at 8. Plaintiff argues that the surgeries to which the Commissioner refers were a right carpal tunnel and right cubital tunnel operation, and therefore would not address Plaintiff's problems with diabetic

17

neuropathy. *See id.* Plaintiff also cites physician records from after July 16, 2015 that show that she complained of problems with diabetic neuropathy. *See id.*

And Dr. Tan's medical records do show that Plaintiff continued to have numbness in her extremities even after her surgery. *See* Dkt. No. 13-1 at 845. On January 19, 2017, Dr. Tan also noted that Plaintiff reported neurologic manifestations of polyneuropathy. *See id.* at 1445. Plaintiff argues that the reports to which the Commissioner points are misleading because they are not reports from physicians that were treating Plaintiff for diabetic neuropathy.

The undersigned is persuaded that Plaintiff has the better of this argument. Her July 2015 surgery may have resolved problems attributed to carpal tunnel, but the medical records from after July 2015 show that Plaintiff continued to experience issues related to diabetic neuropathy even after her surgery. The ALJ's finding that Plaintiff has no manipulative restrictions of her extremities is not supported by substantial evidence.

### Recommendation

The hearing decision should be reversed and this case remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 23, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE